# Gibson v. The State.

### Indictment for Murder.

1. *Special venire; mistake, &c., not ground of motion to quash.*—It is no sufficient ground for quashing the special *venire* in a capital case, that one of the persons on the list is under twenty-one years of age; or that another is a woman; or that another has been dead for more than a year; or that another does not live in the county; or that there is a mistake in the name of another    These errors make it the duty of the court to direct the names of the disqualified persons to be discarded, and others to be summoned in their place (Code, § 4322), unless the court may be of the opinion that the ends of justice require other action.

2. *Peremptory challenges in capital case.*—Under the general statutory provisions now of force (Sess. Acts 1888-9, pp. 77-9, § 2), a single defendant in a capital case is entitled to twenty-one peremptory challenges, and when two or more are on trial jointly, each is entitled to "*one-half*" of that number.  Held, that when two are on trial jointly, one may be allowed *eleven*, and the other *ten* peremptory challenges.

3. *Proof of good character; admissibility and effect of.*—On a trial for murder, the defendant may always adduce evidence of his good character for peace and quiet in the neighborhood in which he lives; but the jury can not consider this evidence as sustaining his credibility as a witness in his own behalf, when the prosecution has not assailed his character for truth and veracity.

4. *Charge construed as a whole, and in connection with evidence.*—The general charge of the court must be construed as a whole, and in connection with the evidence, and not in disconnected parts, or by garbled extracts, to which exceptions are separately reserved.

5. *Self-defense; burden of proof as to pressing necessity, or possibility of safe retreat.*—When the prosecution has proved the intentional killing of the deceased by the defendant, with a deadly weapon, the *onus* is cast on the defendant to prove a pressing necessity on his part to take life in self-defense, unless this fact is shown by the evidence adduced by the prosecution; and the inability to safely retreat, without apparently increasing his peril, is one of the elements creating a present necessity to kill. (*Cleveland v. State*, 86 Ala. 2, "is of later authority than *Brown v. State*, 83 Ala. 33, on this point," and the court adheres to it.)

6. *Same; burden of proof as to fault or provocation.*—When the defendant has established a present pressing necessity on his part to take life, which involves disproof of an opportunity to retreat safely, the *onus* is on the prosecution to show that he was at fault in provoking or bringing on the difficulty.

7. *Presumption of malice from use of deadly weapon.*—In cases of homicide, the use of a deadly weapon raises a presumption of malice, unless such presumption is repelled by the evidence which proves the killing.

8. *Homicide in difficulty sought or provoked by defendant.*—If the defendant sought the difficulty with the deceased, for the purpose of chastising or beating him for some real or imaginary cause, and armed himself with a pistol, for use if necessary, and did use it, and killed the

| | |
|---|---|
| 89 | 121 |
| 94 | 24 |
| 94 | 66 |
| 94 | 89 |
| 94 | 605 |
| 89 | 121 |
| 96 | 86 |
| 96 | 100 |
| 96 | 108 |
| 97 | 6 |
| 97 | 52 |
| 97 | 56 |
| 97 | 144 |
| 89 | 121 |
| 98 | 6 |
| 98 | 17 |
| 89 | 121 |
| 99 | 153 |
| 89 | 121 |
| 100 | 52 |
| 100 | 84 |
| 100 | 119 |
| 102 | 13 |
| 102 | 99 |
| 102 | 143 |
| 89 | 121 |
| 103 | 36 |
| 104 | 32 |
| 105 | 17 |
| 105 | 30 |
| 89 | 121 |
| 106 | 27 |
| 109 | 22 |
| 110 | 18 |
| 110 | 67 |
| 110 | 95 |
| 89 | 121 |
| 115 | 40 |
| 115 | 690 |
| 89 | 121 |
| 116 | 481 |
| 89 | 121 |
| 124 | 20 |
| 89 | 121 |
| 129 | 38 |
| 89 | 121 |
| 133 | 95 |
| 89 | 121 |
| 141 | 31 |

[Gibson v. The State.]

deceased, he is guilty of murder, although it may have become necessary for him to use the pistol during the rencontre, in order to save his own life, or to prevent great bodily harm.

9. *Conspiracy; liability for acts and conduct of each other.*—When the evidence shows a conspiracy between the two defendants, or common design to assault and beat the deceased, each is criminally responsible for the acts of the other in the prosecution of that common purpose—that is, for everything done by either which follows incidentally in the execution of the common design, as one of its probable and natural consequences, even though it was not intended as a part of the orig nal design or plan.

10. *Same.*—To establish a conspiracy between the defendants, or common purpose to assault and beat the deceased, or to kill him, it is not necessary to prove an express agreement between them, but an implied understanding may be established by circumstantial evidence; and whei the attack is made by one ot them, the presence of the other at the time, aiding and encouraging him, may justify the jury in holding each equally responsible for the homicide which resulted.

11. *Charges on law of homicide, claiming acquittal unless murder in first degree is shown.*—On a prosecution for murder, the defendant may be convicted of any degree of unlawful homicide; and therefore, charges requested, claiming an acquittal unless the evidence establishes murder in the first degree, are properly refused.

12. *Numbering charges.*—When numerous charges are asked and refused, the failure to number them (except by pencil-marks on the margin of the transcript in this court), or otherwise identify them, tends to embarrassment in their discussion by this court, and should be avoided.

13. *Charge as to constituents of murder.*—Since malice is an ingredient of murder in either degree, a charge instructing the jury that, "if they are reasonably satisfied from the evidence that the defendant was, really or apparently, in imminent peril to his life or limb, from which there was no reasonable means of escape, and that he neither provoked nor encouraged the difficulty, and fired the fatal shot under this reasonable apprehension, and did not fire it of malice, then they should not find him guilty of murder in either degree,"—asserts a correct proposition, and its refusal is error.

14. *Refusal of correct charge, not abstract.*—In a criminal case, the defendant is entitled to have any charge asked given, when it is not misleading, states correctly a legal principle applicable to the case, and is not abstract, though it may be based on evidence which is weak, insufficient, or of doubtful credibility; and the refusal of such a charge is a reversible error.

FROM the Circuit Court of Crenshaw.

Tried before the Hon. JOHN P. HUBBARD.

The defendants in this case, Ben. and Sam. Gibson, were jointly indicted and tried for the murder of John Smith, by shooting him with a pistol, or by cutting him with a knife; were jointly tried, each convicted of murder in the second degree, and sentenced to the penitentiary for the term of twenty years. During the organization of the petit jury, as the bill of exceptions shows, the defendants made several motions to quash the special *venire*, based on mistakes in names, disqualification of persons summoned, &c., as more particularly stated in the opinion of the court. Each of the

defendants claimed twenty-one peremptory challenges; but the court, having allowed eleven peremptory challenges to one of them, and ten to the other, as they were claimed, refused to allow any more; and to this ruling each of the defendants excepted.

The evidence adduced on the trial, as set out in the bill of exceptions, showed that the difficulty between the parties occurred one Sunday afternoon in May, 1889, near a country school-house, where singing exercises were usually held at that time, which the deceased was in the habit of attending, though the defendants were not; that they accosted him as he came up from a spring near by, and Ben. Gibson asked him why 'he had gone into the field and cursed their old father;' that the deceased denied the accusation, and backed off from them ten steps or more, when Ben. Gibson knocked his hat off; and that in the difficulty, which immediately ensued between them, the deceased received three cuts from a knife, and was fatally shot in the neck with a pistol in the hands of Ben. Gibson. It was shown, also, that the deceased drew his knife after his hat was knocked off, and that Sam. Gibson had his open knife in his hand as he approached deceased several steps behind his brother Ben. The defendants reserved several exceptions to rulings on evidence, which it is unnecessary to state, since they are not decided by this court.

The general charge of the court fills twelve pages of the transcript, and it is unnecessary to set it out *in extenso.* Eighteen exceptions were reserved by the defendants to different parts of it, some of which are as follows: (1.) "Although you should believe the defendants' character is good, you can not consider that good character to support or sustain the testimony given by them, but can consider that testimony only the same as if there was no evidence as to their character." (2.) "When life is taken by the direct use of a deadly weapon, the law presumes that the killing was malicious, and therefore murder, and casts on the defendants the *onus* or burden of rebutting it; unless the evidence establishing the killing also shows circumstances of justfication, excuse or mitigation, which overturn the presumption." (3.) "If it appears beyond all reasonable doubt that the deceased came to his death in this county, before the finding of this indictment, by Ben. Gibson intentionally and purposely shooting him with a pistol, and the pistol was a deadly weapon, and the other evidence in the

case does not justify, mitigate, or excuse the killing, it would be murder." (4.) "The defendants must have been free from fault in bringing on the difficulty—that is, must not do or say anything for the purpose of provoking the difficulty, nor be disregardful of the consequences in this respect of any wrongful word or act done by *him*." (5.) "If you find there was a difficulty between the deceased and the defendants' father in his field, that can not in any degree or manner justify, excuse, or palliate the killing; neither can it in any manner justify, excuse, or palliate the bringing on of the difficulty by the defendants, if you find that they, or either of them, did provoke or bring on the difficulty in which the killing was done." (6.) "If Ben. Gibson sought the difficulty with Smith, for the purpose of chastising or beating him, on account of what was alleged to have occurred between his father and Smith, and, in pursuance of that purpose, armed himself with a pistol, to be used in the event it became necessary, and did use it, and killed Smith with it in pursuance of that purpose; then this would be murder, although it was necessary to use it in order to save his own life, or his body from great harm." (7.) "If the defendants went to the school-house by design, or for the purpose of raising a difficulty with Smith, and to beat him; or, if they did not go for and with such intent and purpose, but formed such intent and purpose after they got to the school-house, and went after Smith for such purpose; this would constitute Sam. Gibson a party to the killing, and render him as responsible for it as Ben. Gibson." (8.) "If Sam. Gibson was present at the difficulty, without any preconcert, and without any common or illegal purpose; and one of them did the deed of violence, and the other was present, aiding, abetting, encouraging, or giving countenance to the unlawful act, or ready to lend assistance if it should become necessary; then Sam. Gibson would be as much a party to the killing as Ben. Gibson, and they would stand in the same category." (9.) "If Sam. Gibson was present at the time of the killing, aiding, abetting, or encouraging Ben. in the killing, this would constitute Sam. a party to the killing the same as Ben."

The defendants requested 14 charges in writing, and duly excepted to their refusal. The 13th, the only one specially noticed by this court, is set out in the opinion.

GAMBLE & BRICKEN, and PARKS & PARKS, for appellant, argued and insisted on all the points reserved by exception,

[Gibson v. The State.]

and cited the following authorities as to the points stated: (1.) As to the effect of proof of good character, *Felix v. State*, 18 Ala. 720; *Dupree v. State*, 33 Ala. 380; *Carson v. State*, 50 Ala. 134; *McKee v. State*, 82 Ala. 32; *Lewis v. State*, 88 Ala. 11; *Clark v. State*, 78 Ala. 474.    (2.) As to the presumption of malice from the use of a deadly weapon, *Eiland v. State*, 52 Ala. 322; *Murphy v. State*, 37 Ala. 142. (3.) That portion of the general charge of the court which instructs the jury, "If Ben. Gibson sought the difficulty with Smith for the purpose of chastising or beating him on account of what occurred between his father and Smith," &c., is abstract.—*Rains v. State*, 88 Ala. 91; *Smith v. State*, 88 Ala. 73; *Perry v. State*, 87 Ala. 30; *Goldsmith v. State*, 86 Ala. 55; *Beck v. State*, 80 Ala. 1; *Henderson v. State*, 49 Ala. 20.    (4.) One man is not criminally responsible for the acts of another, unless a common design, a community of purpose between them, is shown to the satisfaction of the jury; and the court erred in its instructions to the jury, as to the liability of Sam. Gibson for the act of Ben.—*Frank v. State*, 27 Ala. 37; *Johnson v. State*, 29 Ala. 62; *Martin & Flinn v. State*, 28 Ala. 71; *Jordan v. State*, 82 Ala. 1.    (5.) As to the correctness of the several charges asked and refused, see *Cleveland v. State*, 86 Ala. 1; *Lang v. State*, 84 Ala. 1; *Mose v. State*, 36 Ala. 211; *Joe v. State*, 38 Ala. 422; *Riley v. State*, 88 Ala. 193.

WM. L. MARTIN, Attorney-General, for the State.—(1.) The objections to the *venire* were properly overruled.—Code, § 4322; *Roberts v. State*, 68 Ala. 166, 515; *Hubbard v. State*, 72 Ala. 164; *Jackson v. State*, 76 Ala. 26; *Williams v. State*, 81 Ala. 1; *McKee v. State*, 82 Ala. 32.    (2.) The defendants being on trial jointly, each was entitled to only one-half of twenty-one peremptory challenges.—Sess. Acts 1888–9, p. 78, § 2.    The proviso to that section, that "nothing contained herein shall repeal any common-law right of challenge," must be limited to challenges at common law other than peremptory.—Th. & M. on Juries, § 153.    (3.) In all criminal prosecutions, the accused may give evidence of his previous good character for peace.—3 Brick. Digest, 227, § 683.    But such evidence does not go to his character for truth and veracity, and can not be invoked in support of his testimony as a witness.—*Morgan v. State*, 88 Ala. 223. (4.) As to the presumption arising from the use of a deadly weapon, the charge of the court stated the law correctly.

*Sylvester v. State,* 72 Ala. 201; *Brown v. State,* 83 Ala. 33; *Jenkins v. State,* 82 Ala. 25. (5.) The law of homicide is correctly stated by the court.—*Parker v. State,* 88 Ala. 4; *Rains v. State,* 88 Ala. 85; *Lane v. State,* 85 Ala. 11; *Kennedy v. State,* 85 Ala. 326; *Ex parte Nettles,* 58 Ala. 268. (6.) The law of conspiracy is correctly stated.—*Williams v. State,* 81 Ala. 1; *Martin v. State,* at present term. (7.) As to the kind of doubt which will authorize an acquittal, the charge of the court is sustained by *Owens v. State,* 52 Ala. 400; *Coleman v. State,* 59 Ala. 92; *Parish v. State,* 63 Ala. 164. (8.) As to the law of self-defense, the charge of the court is supported by *Mitchell v. State,* 60 Ala, 26; *Parker v. State,* 88 Ala. 4; *Lewis v. State,* 88 Ala. 11. (9.) The charges asked and refused were each faulty in one or more particulars, as shown by the following authorities: *Storey v. State,* 71 Ala. 329; *Cleveland v. State,* 86 Ala. 1; *DeArman v. State,* 71 Ala. 351; *Taylor v. State,* 48 Ala. 180; *Rogers v. State,* 62 Ala. 170; *Cross v. State,* 63 Ala. 40; *Rutledge v. State,* 88 Ala. 85; *Williams v. State,* 81 Ala. 1.

SOMERVILLE, J.—1. It was no ground upon which to quash the *venire* of special jurors summoned for the trial of the defendants, that one of those named on the list was *a minor* under twenty-one years of age; that another was *a female* instead of a male; that another had been *dead* for more than a year; that another was a *non-resident* of the county, or that there was a mistake in the name of still another. These errors made it the duty of the court to direct the names of such disqualified persons to be discarded, and others to be summoned to supply their places, unless, in the opinion of the court, the ends of justice required otherwise. Code, 1886, § 4322; *Roberts v. The State,* 68 Ala. 515; *Fields v. The State,* 52 Ala. 348; *Jackson v. The State,* 76 Ala. 26.

2. Under the act approved February 28th, 1889 (Acts 1888-89, pp. 77-79), a single defendant, who is on trial alone for a capital offense, is entitled to twenty-one peremptory challenges. It is further declared as follows in section 2 of the same law: "When two or more defendants are on trial jointly for a capital offense, or other felony, each defendant shall be entitled to *one-half* of the peremptory challenges allowed by this act." In this case, one of the defendants was allowed eleven peremptory challenges, and the other ten. This was a compliance with the statute, as nearly

as was practicable, the personality of jurors not being capable of enumeration by vulgar fractions.

3. The defendants were permitted to prove their good character for peace in the neighborhood in which they resided, which was clearly relevant to the issues arising on an indictment for murder. There was no effort made by the State to assail their character for truth and veracity, although they testified as witnesses in their own behalf. The court properly ruled, that the evidence introduced as to good character for peace and quiet, could not be looked to for the purpose of sustaining the credibility of the parties as witnesses. *Morgan v. State*, 88 Ala. 223.

4. The law of self-defense was clearly and accurately stated to the jury in the general charge of the court, and in terms substantially enunciated in the past decisions of this court.—*Storey v. State*, 71 Ala. 329; *DeArman v. State, Ib.* 351. This charge must be construed as a whole, in connection with the evidence, and not in disconnected parts, or by garbled extracts.— *Williams v. State*, 83 Ala. 68.

5. And among other things, it was correctly asserted in substance that, after the intentional killing of the deceased by defendant with a deadly weapon had been proved, the burden rested on the defendant to prove a pressing necessity on his part to take life in self-defense, unless this fact arises out of the evidence produced against him to prove the homicide. The *onus*, therefore, rests on the defendant, in such case, to show that he could not safely retreat without apparently increasing his peril. This must be so, for the inability to safely retreat is one of the elements of fact which enters into and creates the necessity to kill.—*Carter v. State*, 82 Ala. 13. If there be a safe mode of successful retreat, there can be no necessity to kill, unless the appearances surrounding the defendant reasonably indicate the contrary. Whart. Cr. Ev. (8th Ed.), § 334; *Webster v. Com.*, 5 Cush. 295. The rule as to the *onus* of proof on this point is stated in accordance with the above view in *Cleveland v. The State*, 86 Ala. 2, which is of later authority than *Brown v. The State*, 83 Ala. 33, where the contrary rule seems to be asserted. We believe the doctrine of *Cleveland's Case* to be correct, and adhere to it.—*Lewis v. State*, 88 Ala. 11.

6. The burden was on the State, however, to show that the defendants were in fault in bringing on, or provoking the difficulty,—not on the defendants to prove that they did not provoke it.—*Brown v. State*, 83 Ala. 33; *McDaniel v. State*, 76 Ala. 1.

7. There was no error in that portion of the charge which asserts that the use of a deadly weapon, in cases of homicide, raises the presumption of malice, unless such presumption is repelled by the evidence which proves the killing. *Sylvester v. State*, 72 Ala. 201.

8. It was unquestionably the law, as charged by the court, that if the defendant, Ben. Gibson, sought the difficulty with the deceased for the purpose of chastising or beating him, on account of the alleged abuse of defendant's father, or other like reason, and, in pursuance of such purpose, armed himself with a pistol, to be used in the event it became necessary, and he did use it, and killed deceased with the weapon, pursuant to such purpose, then this would be murder, although it was necessary to use the pistol, in order to save his own life, or his body from great harm.—*Ex parte Nettles*, 58 Ala. 268.

9. There was evidence tending to show a conspiracy on the part of the defendants to attack the deceased—circumstances from which the jury were authorized to infer a common design, at least, to assault and beat him.    Each would, therefore, be criminally responsible for the acts of the other in prosecution of the design for which they combined; *i. e.*, for everything done by the confederates, which follows incidentally in the execution of the common design, as one of its probable and natural consequences, even though it was not intended as a part of the original design or common plan.    The law on this subject is fully discussed in *Williams v. The State*, 81 Ala. 1; 60 Amer. Rep. 133; s. c., 9 Crim. Law Mag. 480; and in *Martin v. State, ante*, present term.

The charges of the court seem to conform to the principles declared in these decisions.—*Amos v. State*, 83 Ala. 1.

10. It was unnecessary to prove any express agreement on the part of the defendants to attack the deceased, or to kill him.    An implied understanding, established by circumstantial evidence, would be sufficient.    And the presence of one of the defendants, aiding, abetting and encouraging the other in making an attack on the deceased, might justify the jury in holding him criminally responsible for the homicide which resulted in the death of the party assailed.—*Williams v. State*, 81 Ala. 2, *supra*.

11. Many of the charges requested by the defendants demanded for them an acquittal of every grade of homicide unless the evidence proved beyond a reasonable doubt that the killing was done with malice aforethought, deliberately,

willfully and premeditatedly, which are ingredients only of murder in the first degree. The effect of these charges was to assert that, unless defendants were convicted of murder in the first degree, they could not be convicted of any lower grade of homicide. These charges were obviously erroneous, and their refusal was without error.

12. We have examined all the charges in the record—those given by the court, as well as those refused on request of the defendant. None of them are numbered, or otherwise identified, except by pencil-marks, apparently made by counsel. This leads to embarrassment in their discussion, and should be obviated on another trial.

13-14. We discover but one error in any of these numerous rulings. The following charge, requested by the defendants, is supported by their own testimony rendered on the trial, which tends not only to reduce the grade of homicide, but to make out a case of self-defense: "The court charges the jury, that if they are reasonably satisfied, from all the evidence in this case, that the defendant Ben Gibson was really, or to ordinary appearances, in imminent peril to his life or limb, from which there was no reasonable means of escape, and that he neither provoked nor encouraged the difficulty, and, under this reasonable apprehension, the defendant fired the fatal shot, and that he did not fire the fatal shot of malice,—then they should not find the defendant guilty of murder in either degree." There can be no murder in either degree, without malice. The most culpable phase of homicide, without the element of malice, is voluntary manslaughter. The charge does not demand an entire acquittal of all criminal responsibility for the act done, but a reduction of the verdict to a finding for manslaughter. The testimony of the defendants themselves tended to support every phase of the instruction requested. It mattered not that this testimony may have sprung from parties deeply interested, and have been contradicted by many disinterested witnesses, so as to be entitled to but little weight in the estimation of the trial judge. It was for the jury, and not the court, to pass on the credibility of the witnesses, and the sufficiency of the evidence. Every prisoner at the bar is entitled to have charges given, which, without being misleading, correctly state the law of his case, and are supported by any evidence, however weak, insufficient, or doubtful in credibility. The charge under consideration was a correct enunciation of the law, and, being supported by the evidence,

[Carden v. The State.]

its refusal must operate to reverse the judgment of conviction.—*McDaniel v. State*, 76 Ala. 1.

The other rulings of the court seem to us to be free from error.

The judgment is reversed, and the cause remanded for a new trial. In the meanwhile, the prisoners will be retained in custody until discharged by due process of law,