# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1890–91.

## Hammil *v.* The State.

### *Indictment for Murder.*

1. *Competency of juror; disqualifying opinion as to guilt or innocence.*—A person drawn and summoned as a juror in a criminal case, is not disqualified because he has formed an opinion as to the guilt or innocence of the accused, unless it is a fixed opinion which would bias his verdict (Code, §§ 4331–2); and having stated, though with hesitation, in answer to repeated questions, that it would not bias his verdict—as "I have an opinion, but don't know whether it would bias my verdict or not;" "I can't say that it would bias my verdict;" "Well, I will answer no"—he is properly accepted.

2. *Dying declarations.*—A written statement signed by the deceased a few minutes before his death, about two hours after he received the fatal shot, in which he details the circumstances of the difficulty, and states that he is satisfied he is "not long for this world," is admissible as a dying declaration; it being also shown that, immediately after he was shot, he sent for his wife and a priest, and that he was told by the officer who wrote down the statement that he did not have long to live.

3. *Self-defense; attempt to retreat.*—Retreat or flight need not be attempted by one who, without fault on his own part, is drawn into imminent peril of life or limb, if by so doing he increases the threatened danger; and this principle is not contravened by a charge which requires that there must be "no other probable means of escape," or "no other reasonable mode of escape by retreating, or by avoiding the combat with safety."

4. *Murder in first degree; charge as to.*—A charge which instructs the jury that, if the defendant purposely killed the deceased "with a wickedness or depravity of heart towards him, and the killing was determined on beforehand, and after reflection, for however short a time is immaterial, he is guilty of murder in the first degree," is not erroneous.

37

| | |
|---|---|
| 90 | 577 |
| 95 | 7 |
| 95 | 23 |
| 90 | 577 |
| 97 | 7 |
| 90 | 577 |
| 98 | 7 |
| 90 | 577 |
| 99 | 181 |
| 90 | 577 |
| 102 | 14 |
| 90 | 577 |
| 105 | 95 |
| 90 | 577 |
| 115 | 40 |
| 90 | 577 |
| 118 | 132 |
| 119 | 654 |
| 90 | 577 |
| 134 | 31 |
| 90 | 577 |
| 199 | 41 |

[Hammil v. The State.]

FROM the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The defendant in this case, James Hammil, was indicted for the murder of John Maguire, by shooting him with a rifle; was convicted of murder in the first degree, and sentenced to the penitentiary for life. During the organization of the jury, as the bill of exceptions shows, the name of one Porter being drawn as a juror, his examination proceeded thus : *Question by clerk:* " Have you a fixed opinion in this case that would bias your verdict?" *Answer:* " I have an opinion, but don't know whether it would bias my verdict or not. " *By the court:* " Have you a fixed opinion? Answer the question one way or the other. The clerk did not ask if you had an opinion, but if you had a fixed opinion that would bias your verdict. " *Answer:* " The opinion I have is based on what I have read and heard. I have an opinion. " *By the court:* " That is not the question. The question is, whether that is a fixed opinion that would bias your verdict. " *Answer:* " I can't swear that it would. " *By the court:* " Sir?" *Answer:* " I can't say that it would bias my verdict. " *By the court:* " Do you answer yes, or no?" *Answer:* " Well, I will answer no." The defendant thereupon challenged the juror for cause ; the court overruled the challenge, and the defendant excepted.

The homicide occurred in the city of Mobile, on the 23d December, 1889, near six o'clock in the evening, when the parties met on Conception street. The deceased was a city policeman, and the defendant kept a baker's shop. About four o'clock of that day, the defendant had gone to the house of the deceased, in search of a dog which he said he had lost, and asked the wife of the deceased if his dog was there ; and after some words between them, as to the purport of which the evidence was conflicting, the deceased came out, and ordered the defendant off his premises, using abusive words, as some of the evidence tended to show. The defendant walked away quietly, but said " he would bet $100 he got that dog;" and he went to his shop, lighted the lamps, and ate his supper, after which he picked up his rifle, and started down Conception street. The evidence was conflicting as to what passed between the parties when they met near a street corner. The defendant's evidence tended to show that, after some abusive words between them, the deceased attempted to draw his pistol, or made a motion as if to draw it. A pistol was found on him after he was shot, but it was in a canvas case, as he was in the habit of carrying it when on duty. The defendant fired two shots, one striking the deceased in the abdomen, and

the other in the leg ; and death ensued from the first wound, about eight o'clock that evening. There was evidence, also, tending to show a state of bad feeling between the parties, growing out of the defendant's arrest by the deceased, some two years before, on a charge of being drunk and disorderly, and threats made between them growing out of the affair.

The prosecution offered in evidence, as a dying declaration, a written statement signed by the deceased, after it had been read over to him by the justice of the peace who had written it down, which was in these words : " I, John Maguire, being satisfied that I am not long for this world, and being conscious of the fact, do make this my declaration : That James Hammil, a baker, corner of Canal and Warren streets, shot me this evening, about half past five o'clock, while going up Conception street, between Texas and Elmira streets, while I was going to work. He shot me with a rifle. He asked me, where was his dog. I told him I did not have his dog. Then he threw down his gun, and shot me. He shot me first in the stomach, and then in the leg. I fell down, and he walked away. He came into my yard before that, at this house, and asked my wife if I had his dog. She said, No. I then told him to go out of the yard, to get out of my gate. He said, ' I have been told you had him.' I told him to go away from my gate. *I did not want to have any fuss with him.* He said, he would bet one hundred dollars he would get the dog. I walked in my house, and he went away. I sat down, and finished my supper. There is an old hound dog that followed me home some time. I do not know whom he belonged to. I saw Hammil when he shot me. He stood six or seven feet from me when he fired his rifle. He shot me with a breech-loader. "

As showing the admissibility of this written statement, as a dying declaration, the prosecution proved that the deceased, " a few minutes after he was shot, called for some one to go for the doctor, and for the priest;" that the wound was necessarily fatal, " and his condition critical from a period shortly after the shot was fired ;" " that he was in a dying condition at the time of making said declaration, but perfectly rational and clear in his statements, but died a few minutes afterwards ; that he caused his wife and child to be called to kiss him, just after he had signed it, and died a few seconds afterwards." The wife of the deceased, and one of his attending physicians, testified that he was aware of his condition, and knew that he could not live, but gave no statement by him showing the fact. The other attending physician testified, that he had told the wife of the deceased her husband could

[Hammil v. The State.]

not live—that the wound was necessarily fatal; "but this was not communicated by her to her husband." On this evidence, the court admitted the statement as a dying declaration, against the objection and exception of the defendant; but suppressed the italicized words, to which a separate objection was made.

The court gave the following charges to the jury, at the instance of the State, the defendant excepting to each:

1. "When a defendant sets up self-defense in justification or excuse of a killing, the burden of proof is on him to show to the jury by the evidence that there was a present, impending danger, real or apparent, to life or limb, or of grievous bodily harm, from which there was no other probable means of escape."

2. "Before the jury can acquit the defendant on the ground of self-defense, three essential elements must concur: (1) the defendant must be reasonably without fault in bringing on the difficulty, and must not be disregardful of the consequences in this respect of any wrongful words or act; (2) there must have existed at the time, either really or so apparently as to lead a reasonable mind to the belief that it actually existed, a present, impending, imperious necessity to shoot, in order to save his own life, or to save himself from great bodily harm; and (3) there must have been no other reasonable mode of escape by retreating, or by avoiding the combat with safety."

3. "If the defendant, in this county, and before the finding of this indictment, purposely killed John Maguire, by shooting him with a gun, with a wickedness or depravity of heart towards said deceased, and the killing was determined on beforehand (for however short a time before the fatal shot was fired is immaterial), he is guilty of murder in the first degree."

GREGORY L. & H. T. SMITH, for the appellant.—(1.) Porter was not competent as a juror.—Code, § 4325; *Bales v. State*, 63 Ala. 35. (2.) Before a dying declaration is admissible, it must be shown that the deceased, at the time it was made, was in actual danger of death, and fully appreciated the impending danger.—*Pulliam v. State*, 88 Ala. 3. (3.) The first and second charges each were erroneous.—*Carter v. State*, 82 Ala. 12; 88 Ala. 19. (4.) The third charge is erroneous. *Watson v. State*, 82 Ala. 12; *Jackson v. State*, 78 Ala. 25; *Mitchell v. State*, 60 Ala. 28; *Cribbs v. State*, 86 Ala. 613.

W. L. MARTIN, Attorney-General, and LESLIE B. SHELDON, for the State.—(1.) Porter was a competent juror.—Code, § 4331; *Bales v. State*, 63 Ala. 30; *Jackson v. State*, 77 Ala.
VOL. XC.

18; *Long v. State,* 86 Ala. 36. (2.) The dying declarations were properly admitted.—*Pulliam v. State,* 88 Ala. 1; 1 Brick. Digest, 512, § 718; 1 Taylor's Ev. 718. (3.) The first charge correctly states the law as to the burden of proof in cases of self-defense.—*Hadley v. State,* 55 Ala. 31; *DeArman v. State,* 71 Ala. 351; *Cleveland v. State,* 86 Ala. 1; *Lewis v. State,* 88 Ala. 11; *Gibson v. State,* 89 Ala. 121. (4.) The scond charge properly states the elements of self-defense.—*Cross v. State,* 63 Ala. 40; *Mitchell v. State,* 60 Ala. 26; *Ingram v. State,* 67 Ala. 67; *McKee v. State,* 82 Ala. 32; *Cribbs v. State,* 86 Ala. 613. (5.) The third charge is sustained by *Long v. State,* 84 Ala. 1; *Martin v. State,* 77 Ala. 1.

STONE, C. J.—To disqualify a petit juror for service in a criminal trial, he must, under our statute, have more than a bias, or fixed opinion as to the guilt or innocence of the accused. That opinion must be so fixed as that it would bias the verdict he would be required to render.—Code of 1886, § 4331, subd. 7. And of the existence *vel non* of such fixed opinion, the sworn answer of the juror is the only legal evidence.—Code, § 4332. The juror Porter, being sworn, testified, in substance, that he had an opinion, but it would not bias his verdict. He was a competent juror.—*Bales v. State,* 63 Ala. 30; *Jackson v. State,* 77 Ala. 18; *Long v. State,* 86 Ala. 36.

We think it clear that, when the deceased made a statement, which was offered as a dying declaration, he was in fact almost in *articulo mortis;* and the circumstances convince us that he realized and felt that he would not recover from the wound he had received. Every request he made tends strongly to prove that he felt sure that his wound was mortal. Even the paper he signed as a dying declaration states that he was satisfied that he was not long for this world. That paper was rightly received as a dying declaration.—*Pulliam v. State,* 88 Ala. 1, and authorities cited; 3 Brick. Dig. 226.

Charges to a jury should be framed with reference to the tendencies of the testimony, and, in construing them, they should be viewed and interpreted by the same standard. *Alexander v. Alexander,* 71 Ala. 295; 3 Brick. Dig. 115, §§ 133 *et seq.* Measured by this standard, we can not say the City Court erred in either of the charges excepted to.

When one, who is without fault in bringing on a difficulty, finds himself so menaced by present, impending danger to his life or limb, as that he strikes, and thereby slays his assailant, it is not absolutely necessary to his plea of self-defense that

582 SUPREME COURT [Nov. Term,

[Hammil v. The State.]

he should have attempted to escape by flight. If it be made to appear that he was so obstructed by obstacles that he could not escape, or that, in attempting to do so, he would probably have increased the peril with which he was menaced, this would relieve him of all duty to attempt it. Flight need not be attempted by one innocently drawn into such peril, if by so doing he increases the danger threatened.—*Brown v. State,* 74 Ala. 478; 3 Brick. Dig. 219, §§ 574 *et seq.* Charge No. 1 relieved the accused of the duty of attempting to escape, unless such attempt could probably have been made successful. "Probable means of escape" necessarily implies that the means, if resorted to, would probably be safe and successful, and excludes the idea of attempted flight as a duty, if such attempt would probably increase the peril. There was no error in giving this charge.

Charge No. 2 is also free from error. It requires, as one of the ingredients of defendant's plea of self-defense, that "there must have been no other reasonable mode of escape by retreating, or by avoiding the combat with safety." If attempted escape entailed a probable increase of peril, then it could not be a *reasonable mode,* nor could it be attempted with *safety;* and hence the criticism of this charge is not justified by the language employed.

If it was thought that charges one and two were at all obscure in the respect commented on above, it was the duty of the defendant to ask explanatory charges.

Charge 3 was taken from *Lang v. State,* 84 Ala. 1. It is certainly true, that a homicide perpetrated " with wickedness or depravity of heart," without more, is not necessarily and universally murder in the first degree. The charge hypothesizes much more than this. Its language is, " If the defendant purposely killed John Maguire, . . . with a wickedness or depravity of heart towards the deceased, and the killing was determined on beforehand, and after reflection (for however short a time before the fatal shot was fired is immaterial), the defendant is guilty of murder in the first degree." This charge is free from error.

The judgment of the City Court is affirmed.