# CASES

IN THE

# SUPREME COURT OF ALABAMA,

## NOVEMBER TERM, 1892-93.

## Wilkins *v.* The State.

### *Indictment for Murder.*

1. *Malice presumed from use of deadly weapon—burden of proof.*—In cases of homicide, malice is presumed from the use of a deadly weapon; and, the burden of rebutting this presumption is on the slayer, unless the evidence which proves the killing, rebuts it.

2. *Self-defense—retreat—charge construed.*—A charge which asserts that the apparent necessity for taking human life, under the plea of self-defense, must be one, in the existence of which, the defendant must have entertained an honest belief, cannot be fairly construed as asserting that retreat must have been shown to be *impossible* before the defendant could strike in self-defense.

3. *Same.*—A charge that: "When the defendant sets up self-defense in justification or excuse of a killing, the burden of proof is upon him to show to the jury that there was a present, impending danger, real or apparent, from which there was no other probable means of escape, &c.," does not exclude the right of the defendant to stand, when an attempt to escape would increase his peril; but, implies that a retreat, if resorted to, would probably be safe and successful.

4. *Same.*—The following charge is in accord with the established doctrine of self-defense, and is free from error: "Before the jury can acquit the defendant on the ground of self-defense, three essential elements must concur; 1. the defendant must be reasonably without fault in bringing on the difficulty, and must not be disregardful of the consequences in this respect of any wrongful word or act; 2, there must have existed at the time, either really, or so apparently as to lead a reasonable mind to the belief that it actually existed, a present, imperious, impending necessity to cut, in order to save his life, or to save himself from great bodily harm; and, 3, there must have been no other reasonable mode of escape by retreat, or by avoiding the combat with safety."

5. *Elements entering into the definition of murder.*—See charges, 4, 7 and 8, set out in statement of case.

6. *Charges open to criticism, but not erroneous.*—Charges which single out and give undue prominence to the fact of defendants interest in

1-98

[Wilkins v. The State.]

the cause, ignoring other evidence tending to corroborate him, while open to criticism, and should be avoided as far as practicable; when given, will not work a reversal, unless it appear that injury resulted.

7. *Burden of proof.*—When the State has proved the intentional killing of the deceased by defendant, with a deadly weapon, the burden then rests on the defendant to show a pressing, imperious necessity to take life in self-defense, unless the fact arose out of the evidence against him, to prove the homicide. If this be shown, the burden is shifted on the State to show that the defendant was in fault in provoking the difficulty, which, if established, is a full answer to the plea of self-defense.

8. *Same.*—The law does not presume such provocation by the defendant as to impose the burden of its disproof on him; but, when there is evidence tending to establish the plea of self-defense, and also to show that it was overcome, in that the defendant was at fault in bringing on the supposed necessity to take life to save his own, the court may without any invasion of the rules as to the burden of proof, charge the jury that to make the plea of self-defense available, the defendant must be without fault; and, if the aggressor, he cannot invoke the doctrine of self-defense, even if the deceased was approching him in a hostile manner, and whether the necessity to take the life of the deceased was real, or only apparent.

9. *Relative size of decedent and his slayer.*—Where an altercation of words ensued between the defendant and the deceased, which was brought on by the defendant, the result of which was, that the defendant stabbed and killed the deceased, his size as compared with that of defendant, was a fact competent to be shown by the State, for the fair consideration of the jury, in questioning the motive and conduct of the defendant on the fatal occasion.

FROM the City Court of Mobile.

Tried before the HON. O. J. SEMMES.

The appellant was indicted and tried for the murder of Andrew Eichom, by stabbing him with a knife; and, was convicted of murder in the second degree, at the November Term, 1892. It was shown by witnesses for the State, that the deceased was at his place of business on the South side of Conti street, Mobile, on the 7th of August, 1891, when the defendant, accompanied by one Worley and one Murdock, came along; that defendant beckoned to deceased, who put down his pen, and came to the door; that the deceased was in his shirt-sleeves; that he passed out of the door, and in about five seconds stumbled back in the doorway, the defendant following and striking him with a knife, while deceased's back was turned to him; that, when the deceased went out of the door, his shirt sleeves were not open or torn, and after the difficulty, they were torn and open; that, he had two dangerous wounds in the abdomen, which caused his death the next day, and a cut in the shoulder. The witness, Louis Gayle, testified that he was in the store with deceased at the time he was called out by defendant; that, as deceased passed out of the door he went to one side, so

[Wilkins v. The State.]

that he was out of sight of witness ; that witness was about fifteen feet from the door, but heard no conversation between the parties at the door.

The witness, Peter Brown, testified that he was working at a cabinet bench in a store directly opposite to the place where the deceased worked ; that as he looked up he saw the defendant strike the deceased two blows, one in the stomach, and one in the side, and the deceased stumbled in the doorway, and as he rose, the defendant struck him in the back; that witness did not see the knife in the hand of defendant until he had struck the first blow ; witness heard no conversation between the parties prior to the time he looked up ; he saw no weapon in the hand of deceased ; he saw no person present except Worley and deceased, and afterwards Fred Koppersmith ran out of the door. That after the difficulty, defendant and Worley went inside one of the doors of the place where deceased was working, and came out through another.

The witness, Fred Koppersmith, testified that he was in the store at the time of the difficulty ; that he saw the defendant, Worley and Murdock, passing, as he, witness, went back to the office to get his coat; he saw the deceased go out the front door—as he was returning, he saw deceased stumble, and the defendant with a knife raised over him. His impression was that deceased said : "Willie, I have apologized with you."

Ben Worley, witness for defendant, testified that prior to the difficulty he had a conversation with deceased in which conversation deceased used certain offensive epithets of defendant, which witness repeated to the defendant; that afterwards, defendant saw witness and stated that deceased had denied what witness had reported to defendant ; that witness then said that deceased was a liar ; that Willie Koppersmith had heard deceased make the remarks, and offered to go with defendant to see Willie Koppersmith, and prove it ; that defendant at first declined to go with him, remarking that the thing was settled, but afterwards accompanied witness to see Koppersmith, who worked at the same place with deceased ; that as defendant and witness passed the place, witness remarked to defendant : "There Eichom is now, call him," and defendant beckoned to deceased, who came out, when witness said to him : "Did you not tell me last night what I told Wilkins you said ?;" that Eichom hesitated, and said : "After thinking over the matter, I did say it, and turning to the defendant, called him "a g–d d–n bastard son of a bitch," and struck defendant in the mouth,

then started to put his hand in his hip-pocket; that, at this time, defendant caught deceased by the hand, who jerked loose, and tore his shirt-sleeve ; that, defendant then struck deceased three blows with a knife, and walked off with witness.

The testimony of William Murdock, witness for defense, was that he saw the difficulty, and that Eichom first struck the defendant; and, corroborated the witness Worley as to the conversation that preceded the fight.   The defendant made a statement which did not vary substantially from the evidence of the witness Worley.   A number of witnesses testified to the good character of defendant.

This was substantially all the evidence in the case.

The Court, at the request of the State, then gave the following written charges :

1.   "In case of homicide, the law presumes malice from the use of a deadly weapon, and casts on the defendant the onus of repelling the presumption, unless the evidence which proves the killing, shows also, that it was perpetrated without malice ; and, whenever malice is shown, and is unrebutted by the circumstances of the killing, or by other facts in evidence, there can be no conviction for any less degree of homicide than murder."

2.   "The apparent necessity which will excuse the taking of human life under the doctrine of self-defense, in cases of homicide, involves two considerations ; 1, the defendant, himself, must have entertained an honest belief in the existence of such necessity ; and, 2, the circumstances surrounding him must have been such as to impress a reasonable man, under the same state of facts, with the belief of his imminent peril, and of the existence of an urgent necessity to take the life of his assailant, as the only apparent alternative of saving his own life, or else of preventing the infliction on him (the defendant) of grievous bodily harm."

3.   "Before the jury can acquit the defendant on the ground of self-defense, three essential elements must concur ; 1, the defendant must be reasonably without fault in bringing on the difficulty, and must not be disregardful of the consequences, in this respect, of any wrongful word or act ; 2, there must have existed at the time, either really, or so apparently as to lead a reasonable mind to the belief that it actually existed, a present, imperious, impending necessity to cut, in order to save himself from great bodily harm ; 3, and, there must have been no other reasonable mode of escape by retreat, or by avoiding the combat with safety."

4.   "If a party enters into a contest dangerously armed,

and fights under an undue advantage, even though mutual blows pass, if he slays his adversary pursuant to a previously formed design, either special or general, to use such weapon in case of an emergency in which his life would not be endangered, or he would not be in danger of suffering great bodily harm, it is not manslaughter, but it is murder."

5. "To make the plea of self-defense available, the defendant must be without fault. If he was himself the aggressor, he can not invoke the doctrine of self-defense, even if the deceased was approaching him in a hostile manner, and whether the necessity to take the life of the deceased was real, or only apparent; if brought about by the design, contrivance or fault of the defendant, he can not be excused on the plea of self-defense."

6. "When the defendant sets up self-defense in justification or excuse of a killing, the burden of proof is upon him to show the injury, by the evidence, that there was a present, impending danger, real or apparent, to life or limb, or of grevious bodily harm, from which there was no other probable means of escape; unless, the evidence which proves the homicide, proves also its excuse or justification."

7. "If the defendant, in Mobile county, and before the finding of this indictment, purposely killed the deceased, Andrew Eichom, after reflection, with a wickedness or depravity of heart towards said deceased, and the killing was determined on beforehand, even a moment before the fatal cutting was done, the defendant is guilty of murder in the first degree."

8. "If the defendant, in Mobile county, and before the finding of this indictment, purposely killed Andrew Eichom, by cutting him with a knife, with a wickedness or depravity of heart towards said deceased, and the killing was determined on beforehand, and after reflection, (for however short a time before the fatal cutting was done, is immaterial), the defendant is guilty of murder in the first degree."

9. "The court charges the jury that in determining the weight they will give to the defendant's testimony they should consider, along with all the other circumstances having any bearing on the matter, the fact that he is the defendant, and the fact, if they so find, that his testimony is in conflict with other evidence in the case."

10. "The court charges the jury, that the interest the defendant has in the case, may be considered by them in weighing his own evidence."

To the giving of each of these charges, the defendant separately excepted, and assigns the same as error.

[Wilkins v. The State.]

GREGORY L. and H. T. SMITH, for appellant, cited *Allen v. State*, 87 Ala. 107; *Norris v. State*, 87 Ala. 86; *Woodbury v. State*, 69 Ala. 245; *Smith v. State*, 88. Ala. 75; *Jordan v. State*, 81 Ala. 33; *Clay v. State*, 85 Ala. 836; *Harris v. Russell*, 93 Ala. 68; *Leinkauff v. Strauss*, 93 Ala. 463.; *Fariss v. State*, 85 Ala. 1; *Adams v. Thornton & Welborn*, 78 Ala. 492; *State ats Vance*, 80 Ala. 356: *Beck v. State*, 80 Ala. 1; *Marler v. State*, 67 Ala. 55 and 67; *Lowe v. State*, 88 Ala. 8; *Ala. Gt. Sou. R. R. Co. v. Hill*, 90 Ala. 71; *Davis & Sons v. Hayes*, 89 Ala. 565; *Shell v. State*, 88 Ala. 14; *Hammill v. State*, 90 Ala. 577; *Carter v. State*, 87 Ala. 13; *Miles et al v. State*, 58 Ala. 390: *Hodges Bros. v. Coleman & Carroll*, 76 Ala. 119; *Brown v. State*, 83 Ala. 33; *McDaniel v. State*, 76 Ala. 1.

WM. L. MARTIN, Attorney-General, for the State, cited *Hadley v. State*, 55 Ala. 31–38; *Murphy v. State*, 3*i* Ala. 142; *Sylvester v. State*, 72 Ala. 201; *Gibson v. State*, 89 Ala. 121; *Hornsby v. State*, 94 Ala. 55–66; *Ex parte Nettles*, 58 Ala. 268–276; *Storey v. State*, 71 Ala. 329; *DeArman v. State*, 71 Ala. 351; *Cribbs v. State*, 86 Ala. 613; *Hammill v. State*, 90 Ala. 577; *Lang v. State*, 84 Ala. 1; *Martin v. State*, 76 Ala. 1; *McDaniel v. State*, 76 Ala. 1; *Cleveland v. State*, 86 Ala. 1; *Allen v. State*, 87 Ala. 107; *Norris v. State*, 87 Ala. 83; *Waller v. State*, 89 Ala. 79.

HARALSON, J.—There were ten charges given in writing, at the instance of the State, to the giving of each of which the defendant excepted, and assigns as error. These and one other assignment of error, arising on the admission of evidence, raise the questions we are to decide. We consider the charges according to their number, and grouped as far as practicable, as the counsel for defendant has presented them in argument.

I. Charge No. 1 is a correct statement of the familiar principle of the presumption of malice, which, in cases of homicide, arises from the use of a deadly weapon, declaring that the burden of rebutting this presumption is on the slayer, unless the evidence which proves the killing rebuts it. Its correctness was not questioned in the argument of counsel, and could not be.—*Hornsby v. The State*, 94 Ala. 66; *Gibson v. The State*, 89 Ala. 121; *Sylvester v. The State*, 72 Ala. 201. *DeArman v. The State*, 71 Ala. 360.

II. Charges 2 and 6 considered together, have been criticised each, as involving the proposition, "That before self-defense can be set up, flight must have been shown to have been impossible; they both ignore the material

Vol. 98.

qualification upon this doctrine, that flight need not be attempted if it would increase, or apparently increase, the danger to which defendant was subjected;" and the 2nd, for the additional reason, as assigned, that it "asserts that self-defense can not exist unless the defendant entertained the honest belief in the existence of such necessity.

The grounds of objection, as first stated, in each of these charges, is not justified by the language of either. They do not assert, and can not be fairly construed as asserting, that retreat must have been shown to be *impossible* before defendant could strike in self-defense.

The words,—taken from the 6th—"from which there was no other probable means of escape," and those from the 2nd,—"belief of his imminent peril, and of the existence of an urgent necessity to take the life of his assailant"—exclude the idea of retreat as a duty, when an attempt to make it would increase one's peril; but they do imply—as we have before construed the language of the 9th, particularly—that the means, if resorted to, would probably be safe and successful.—*Hammill v. The State*, 90 Ala. 582.

The other ground of objection to the 2nd, is equally untenable. The doctrine of self-defense has its origin in the very principle questioned, namely, that to justify the taking of the life of another, when the slayer would excuse himself on the plea of self-defense, (the other justifying conditions being admitted) the danger to him must have been real, or so manifestly apparent, as to create the reasonable belief *in his mind*, of present, impending peril to life or limb, and that this belief must have been well founded and honest. *Lewis v. The State*, 88 Ala. 13; *Cross v. The State*, 63 Ala. 48; *Bain v. The State*, 70 Ala. 7; *DeArman v. The State*, 71 Ala. 359; *Storey v. The State*, Ib. 329; 1 Wharton's Cr. Law, § 491.

III. The ground of objection to the 3rd charge is opposed to our adjudications on that subject. The 3rd and last proposition in the charge, is the only one excepted to; but the whole charge, and this last instruction, are thoroughly in accord with the established doctrine of self-defense, as repeatedly declared by this court.—*Poe v. The State*, 87 Ala. 69; *Tesney v. The State*, 77 Ala. 39; *Willis v. The State*, 73 Ala. 362; *Ingram v. The State*, 67 Ala. 67.

IV. Charges 4, 7 and 8, assert principles which have been heretofore recognized by us as correct, and from which we are unwilling to depart. They each contain the elements entering into the definition of murder in § 3725 of the Code. *Martin v. The State*, 77 Ala. 4; *Lang v. The State*, 84 Ala. 1;

*Hammill v. The State*, 90 Ala. 582 ; *Smith v. The State*, 68 Ala. 424 ; *Mitchell v. The State*, 60 Ala. 26.

V. Charges 9 and 10 have heretofore been sustained as free from error.—*Allen v. The State*, 87 Ala. 109 ; *Norris v. The State, Ib.*, 88. See also Wharton's Criminal Ev. § 429. The only objection urged to them is, that they single out and give undue prominence to the fact of defendant's interest in the cause, ignoring other evidence tending to corroberate him ; and that charge 9, submitted to the jury, the consideration of conflict in the evidence, when in fact, there was none.

As to the first objection, the charges may be open to criticism, and might have been refused. It has been heretofore said by us, that "such charges should be avoided, as far as practicable, being calculated to unduly impress the minds of the jury, and prejudice the defendant. When given, however, they will not work a reversal of the judgment, unless it appear that injury resulted.—*Cribbs v. The State*, 86 Ala. 616. Generally, neither the giving or the refusal to give such charges will be considered as reversible error. If given, the party feeling himself aggrieved, may always ask explanatory charges.—*McKleroy v. The State*, 77 Ala. 95 ; *Lang v. The State*, 84 Ala. 1 ; *Poe v. The State*, 87 Ala. 70 ; *Waller v. The State*, 89 Ala. 79.

The assumption that there was no conflict in the evidence is a mistaken conclusion. Worley was not a peace-maker between these two men. He fomented the strife, in which one of them, very unnecessarily lost his life, and the other, is overwhelmed in trouble not far short of death. He used language towards deceased which was violent and unfriendly, and easily persuaded defendant to accompany him on a visit which did not appear to be a peaceable and friendly one, toward deceased. There are indications in the evidence, that they carried one Murdock with them. He was along and witnessed the killing, and neither he nor Worley raised a hand to prevent it, so far as appears. Might they not have done so ? The jury might well have concluded from the evidence, on the part of the State, that the attack made on the deceased was in pursuance of a previously formed purpose to chastise or otherwise punish him, and that there was no real or apparent necessity, on the part of the defendant, to kill the deceased, in order to save his own life or limb. The whole effort, on the part of the defendant, in the course of the trial, was to make it appear he acted in self-defense. The evidence of the State's witnesses is in implied conflict with that given by defendant and his witnesses

in his effort to establish this defense, and tends to show that the killing was done in self-defense.

VI.  It is said, the 5th charge, in that it contained, as one of the elements of self-defense, the condition that, "To make the plea of self-defense available, the defendant must be without fault," was erroneous, in that it placed the burden of proving that fact on the defendant.  This was only a part of the charge, which clearly and correctly defined the doctrine of self-defense, in accord with our uniform rulings. It did not misplace the burden of proof; for it was not given on, and had no reference to, that subject  It was but the declaration of a well recognized principle of criminal law, which the jury were to apply to the evidence in the case. The charge, containing the clause excepted to, might have been erroneous, if there had been no evidence on the part of the State to show that the defendant was at fault in having brought on the difficulty.  But, there was evidence introduced by the State, and also, on the part of defendant, which tended to show that defendant contrived to bring about, and did provoke the conflict in which he slew his adversary, and that he could have retreated if he would. When the State proved the intentional killing of deceased by defendant with a deadly weapon, the burden rested on the defendant to show a pressing, imperious necessity to take life in self-defense, unless the fact arose out of the evidence produced against him, to prove the homicide.  If this were shown, the burden was then on the State, to show that defendant was in fault in provoking the difficulty, which being established was a full answer to the plea of self-defense. The law does not presume such provocation, so as to impose the burden of its disproof on defendant.  But, where there is evidence tending to establish the plea of self-defense, and also, to show that it was overcome, in that the defendant was at fault in bringing on the supposed necessity to take life to save his own, the court may, without any invasion of the rule we are considering as to burden of proof, charge the jury, as was done in this 5th charge.—*McDaniel v. The State*, 76 Ala. 7; *Baker v. The State*, 81 Ala. 38; *Brown v. The State*, 83 Ala. 33; *Cleveland v. The State*, 86 Ala. 9; *Cribbs v. The State, Ib.* 616; *Lewis v. The State*, 88 Ala. 13; *Gibson v. The State*, 89 Ala. 127; *Hammill v. The State*, 90 Ala. 580.

VII.  In the cause of the examination of the mother of deceased as a witness for the State, the solicitor propounded to her, and the court allowed, against the objection of defendant, the question, "Was he (the deceased), a larger man than Mr. Wilkins, the defendant?" to which she replied, that "he was about the same size."

There was no error here. It was certainly competent for the State to show, that there was not such disparity in the size and strength of the two men, as to induce the defendant to believe, that he was in the greater peril in consequence of such disparity, if it existed. Whether he was larger or smaller, than, or of equal size with the defendant, was a fact competent to be brought out, for the fair consideration of the jury, in construing the motive and conduct of the defendant on the fatal occasion. If he had been larger, the defendant would have been permitted to show it, as he did introduce evidence tending to show, in the course of the trial. If of equal size or smaller, the State—for the same reasons defendant was properly permitted to show the size of deceased—could show, that the two men were of equal size, or that deceased was smaller than defendant.—Wharton on Homicide, § 606.

We find no error in the record, and the judgment and sentence of the court below is affirmed.

Affirmed. ·