# Ragsdale *v.* The State.

*Indictment for Murder.*

1. *Organization of jury; competency of juror when fixed opinion not shown.*—Although a juror upon his examination *voir dire*, in answer to the question as to whether or not he has "a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict?" answers that he has, but upon being further examined by the court states that he does not know

anything about the facts except from hearsay, and has heard only a few people speak of it, and that he would be governed entirely by the evidence, and that what he had heard would not influence his verdict, and he finally states that he has no fixed opinion that would bias his verdict, such juror is shown to be competent, and the court does not err in so holding.

2. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where a witness for the defendant was jointly indicted with the defendant for the homicide and there was evidence tending to show his complicity in it, and said witness testified that he went with the defendant to the place of the killing and had his pistol in the scabbard but never pulled it out, it is not competent for the defendant to prove by said witness that many months before the killing by the defendant, the life of said witness had been threatened and it was for that reason he was carrying the pistol in his scabbard, and that on the day of the killing he was simply carrying it as was his custom.

3. *Same; same.*—On a trial under an indictment for murder, threats previously made by the deceased, whether communicated to the defendant or not communicated, are not admissible in evidence, unless it appears from the testimony that at the time of the killing the deceased had sought a conflict with the accused, or was making some demonstration or overt act or attack towards the carrying out of such threats. Where the defendant is the aggressor, threats previously made by the deceased against the defendant are not admissible.

4. *Charge of court to jury; when unnecessary to charge upon proof of venue.*—On a trial under an indictment for murder, where the proof of the venue and the crime is fully proved without conflict, and is undisputed, it is no objection that the general charge given by the court to the jury ignores proof of venue.

5. *Homicide; charge not erroneous for failing to instruct as to manslaughter in the second degree.*—On a trial under an indictment for murder, where there is an entire absence of evidence tending to show that the crime committed was manslaughter in the second degree, and all the evidence without conflict or dispute shows that the killing by defendant was intentional, it is no objection to the charge of the court to the jury that it fails to instruct the jury as to manslaughter in the second degree.

6. *Same; charge as to burden of proof.*—On a trial under an indictment for murder, a charge is free from error which instructs the jury that "in this case the killing is not denied nor is it denied that it was done intentionally with a deadly

[Ragsdale v. The State.]

weapon, and the law puts upon the defendant the burden of rebutting the presumption of malice unless the facts and circumstances of the killing rebut this presumption."

7. *Same; charge as to self defense.*—On a trial under an indictment for murder, where the evidence shows without conflict that the defendant was the aggressor in the difficulty, he can not set up the plea of self defense; and, therefore, in such case, the giving of a charge which instructs the jury that "the burden is upon the defendant to reasonably satisfy your minds that he acted in self defense, unless the evidence which proves the homicide proved also the excuse or justification," is error without injury.

8. *Same; charge of court to jury.*—On a trial under an indictment for murder, charges which instruct the jury that if they believe the evidence beyond a reasonable doubt, they can not convict the defendant of murder in the second degree, or of murder in the first degree, or of manslaughter in the first degree, are erroneous and properly refused.

9. *Charge as to reasonable doubt.*—In a criminal case, a charge which instructs the jury that they must find the defendant not guilty "unless the evidence against him should be such as to exclude to a moral certainty every hypothesis but that of his guilt of the offense imputed to him," is erroneous and properly refused.

APPEAL from the Circuit Court of Greene.

Tried before the Hon. S. H. SPROTT.

The appellant in this case, William Ragsdale, was jointly indicted with Thad Gibson, for the murder of Bert Hollingsworth. On motion of the defendant William Ragsdale, a severance was had. Upon the trial of William Ragsdale, he was convicted of murder in the first degree and sentenced to the penitentiary for life.

In the organization of the jury the defendant reserved an exception to the ruling of the court holding that the juror Pippen was qualified. The facts relating to this ruling are sufficiently shown in the opinion.

On the trial of the case, it was shown that Bert Hollingsworth was shot and killed by William Ragsdale in Greene county, Alabama, on Saturday afternoon, October 5, 1901; that the killing occurred in a pasture owned by one Chas. B. Pippen, where there was a baseball ground; that on the Saturday afternoon of the killing

several persons, including Bert Hollingsworth and his brother, Claude Hollingsworth, had assembled at said pasture for the purpose of playing ball in accordance with their custom; that while the persons so assembled were engaged in playing ball, the defendant Ragsdale and Thad Gibson rode inside of the pasture, through the gate, hitched their horses, and then went up to where the ball game was going on; that Ragsdale immediately walked over to where Bert Hollingsworth was standing and, in an angry manner, said to him: "You said that you wanted to see me; you can see me now all that you want to," or words to that effect; that immediately Bert Hollingsworth left the defendant Ragsdale and went in the direction of the baseball pitcher's box (some of the witnesses testifying that Bert said: "I do not want to see you," or words to that effect); that as Hollingsworth walked off he was in his stocking feet and in his shirt sleeves; that the defendant Ragsdale immediately followed Bert Hollingsworth, cursing him, and about the time Hollingsworth reached the pitcher's box, they clinched, and Ragsdale pulled his pistol and fired upon Bert Hollingsworth, who fell and died immediately.

The evidence for the defendant tended to show that after reaching the pitcher's box Bert Hollingsworth grabbed the defendant by the throat, and struck him in the face with something hard, which the defendant took to be a knife, and thereupon the defendant fired.

The rulings upon the evidence are sufficiently shown in the opinion. Under the opinion it is unnecesary to set out at length the general charge given by the court.

The court, at the request of the State, gave to the jury the following written charges: (1.) "The court charges the jury that if they believe beyond a reasonable doubt from the evidence, that the defendant Ragsdale, and the deceased Hollingsworth had had some trouble a few days before the homicide, and that when he, Ragsdale, on the day of the homicide, came to where the deceased (Hollingsworth) was standing at the 'new home base,' he stepped up in front of the deceased, and, in an angry manner, said to him, 'you said you wanted to see me; now you can see me,' and the jury should

[Ragsdale v. The State.]

further find, from the evidence, beyond a reasonable doubt that the deceased left the place and went to the pitcher's stand, some sixty or sixty-five feet away, and the defendant followed the deceased to that place, and they there became involved in a difficulty, and the defendant killed the deceased, then he can not set up self-defense in this case." (2.) "The court charges the jury that to make the plea of self-defense available, the defendant must be without fault. If he was himself the aggressor, he cannot invoke the doctrine of self-defense, even if the deceased struck him, and whether the necessity to take the life of the deceased was real or only apparent, if brought about by design, connivance or fault of the defendant, he can not be excused on the plea of self-defense." (3.) " 'Deliberate' and 'premeditated' as those words are used in the statute, mean only this: that the slayer must intend before the blow is delivered, though it be for only for an instant of time before, that he will strike at the time he does strike, and that death will be the result of the blow, or, in other words, if the slayer had any time to think before the act, however short such time may have been, even a single moment, and did think, and he struck the blow as the result of an intention to kill, produced by this even momentary operation of the mind, and death ensued, that would be a deliberate and premeditated killing within the meaning of the statute defining murder in the first degree." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by him: (9.) "The court charges the jury that if they believe the evidence in this case beyond a reasonable doubt, then they can not convict the defendant of murder in the second degree." (11.) "The court charges the jury that if they believe the evidence in this case beyond a reasonable doubt, then they can not find the defendant guilty of murder in the first degree." (25.) "The court charges the jury that you find the defendant not guilty, unless the evidence against him should be such as to exclude to a moral certainty, every hypothesis but that

[Ragsdale v. The State.]

of his guilt of the offense imputed to him." (30.) "The court charges the jury that if you believe the evidence in this case beyond a reasonable doubt, then you cannot convict the defendant of any higher degree of homicide than manslaughter in the second degree." (31.) "The court charges the jury that if you believe the evidence in this case beyond a reasonable doubt, then you cannot convict the defendant of any higher degree of homicide than manslaugher in the first degree."

J. P. McQueen, Harwood & McKinley, for appellant.—Under the statute, if a juror has such a fixed opinion as to the guilt or innocence of the defendant as would bias his verdict, he is disqualified, and of the existence vel non of such fixed opinion, the sworn answer of the juror is the only evidence.—Hamil v. State, 90 Ala. 581; Code, §§ 5016, 5017; Long v. State, 86 Ala. 43; Bayles v. State, 63 Ala. 36; Davis v. Hunter, 7 Ala. 138; Quesenberry v. State, 3 S. & P. 314; Jackson v. State, 77 Ala. 18.

The court below erred in refusing to admit the testimony of the witness, Lee Hall, and of the witness, Luther Jones, as to threats, and the testimony of the witness, L. L. Lyon, as to the complaint and warrant in proceedings to bind Bert Hollingsworth, the deceased, ever to keep the peace, and the testimony of the defendant as to threats.—Naugher v. State, 116 Ala. 463; Jones v. State, 116 Ala. 468; Roberts v. State 68 Ala. 156; Eiland v. State, 52 Ala. 323; Gafford v. State, 122 Ala. 54; Dupree v. State, 33 Ala. 380; Powell v. State, 52 Ala. 1; Harkness v. State, 129 Ala. 71; Rutledge v. State, 88 Ala. 89.

The general charge of the court which, at the request of defendant, was in writing, ignores the question of venue. This constitutes reversible error.—Bain v. State, 61 Ala. 75; Solomon v. State, 27 Ala. 27; Brown v. State, 27 Ala. 47; Huffman v. State, 28 Ala. 48; Green v. State, 41 Ala. 419; Gooden v. State, 55 Ala. 175; Collin v. State, 69 Ala. 247;

Charles G. Brown, Attorney-General, for the State. The court did not err in holding the witness, Pip-

pen, competent as a juror.—*Long v. State,* 86 Ala. 37; *Hamill v. State,* 90 Ala. 577; *Arp v. State,* 97 Ala. 35; 1 May. Dig., §§ 465, 466, 468, 470, the sections cited being on pages 542 and 543 of the Digest.

The defendant excepted to certain rulings of the court in refusing to allow the witness, Thad Gibson, to testify that he had a pistol, on the occasion of the homicide, because of threats that had been made against him on account of his activity in apprehending the slayer of one Buntin. The evidence sought to be elicited was clearly illegal and immaterial. In the first place, as Gibson was not shown to have had the weapon concealed, he had the lawful right to carry the weapon.—*Gafford v. State,* 122 Ala. 55.

The charge as to the burden of proof was correct and is sustained by the following cases decided by this court.—*Pugh v. State,* 31 So. Rep. 727; *Linnehan's Case,* 113 Ala. 70; *Miller v. State,* 107 Ala. 41; *Gibson v. State,* 89 Ala. 121; 1 May. Dig. p. 810.

It was no objection to the general charge of the court that it ignored proof of venue.

The record shows that the homicide was committed in Greene county, Alabama, and the evidence on this point was without conflict. The record also shows that no point was made in the court below on the subject of venue, and no instructions were given or requested upon that point.—*Smith v. State,* 118 Ala. 117. See *Hubbard v. State,* 72 Ala. 169; *Clarke v. State,* 78 Ala. 477.

A court is authorized, in charging the jury, to assume in its charge a fact as proven when that fact is plainly in evidence, and there is no conflict on the subject.—*Woods v. Moten,* 129 Ala. 228.

HARALSON, J.—Eleven men having been selected as jurors, one Pippen was called and asked if he had "a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict?" and he answered that he had. Being examined further by the court, he stated that he was not present at the difficulty in which the deceased was killed, nor did he know anything about the facts

[Ragsdale v. The State.]

except from hearsay, and had only heard a few people
speak of it. In answer to the further question by the
court, "Whether the opinion he had would affect his
verdict, or would he be governed entirely by the evi-
dence?", he replied. "I would be governed entirely by
the evidence and what I have heard would not affect
my verdict." The court then asked him, "Have you a
fixed opinion as to the guilt or innocence of defend-
ant that would bias your verdict?", to which he re-
plied, "No Sir, I will be governed entirely by the evi-
dence in the case."

It often occurs, when answering on their *voir dire*,
as to their qualifications as jurors, or whether subject
to challenge for cause, that persons do not understand
the meaning of the questions propounded, and are mis-
taken in the answers they reply. One may say, that
he has not been a resident householder or freeholder
of the county for the last twelve months: that he thinks
a conviction should not be had on circumstantial evi-
dence, and that he has a fixed opinion as to the guilt
or innocence of the defendant, which would bias his
verdict, and is honestly mistaken in his replies, as is
often shown by his further examination.

The answers of the juror to the questions propounded
by the court, fully show that he did not intend to say
that he had a fixed and disqualifying opinion as to
the guilt or innocence of the accused, for he stated,
that he only knew of the case from hearsay; that he
would be governed entirely by the evidence; that what
he had heard would not influence his verdict, and fin-
ally he stated, that he had no fixed opinion that would
bias his verdict. We think that under our former rul-
ings, the court did not, as for the objection raised to
his competency, err in holding him to be competent.
*Carson v. State*, 50 Ala. 134; *Long v. State*, 86 Ala. 37;
*Hammil v. State*, 90 Ala. 577; *Arp v. State*, 97 Ala. 5;
*Coghill v. Kennedy*, 119 Ala. 641, 654.

2. The witness for defendant, Thad Gibson, was in-
dicted jointly with the defendant for this homicide,
and there was evidence tending to show his complicity
in it. He had testified that he went with the defend-
ant to the place where, and was present when, defend-

ant slew the deceased; and he had his pistol in his holster or belt, but did not draw it; that he had carried his pistol that way for over a year, and it was his habit to carry it wherever he went, for some time prior to the shooting.

The defendant offered to prove by this witness, that about eighteen months before the killing, one Thomas Buntin was murdered in the county, a few miles from where the witness lived; that witness had taken an active part in apprehending the slayer of Buntin, and had been warned that threats had been made against his life, and that since said warning he had always carried his pistol, for defensive purposes, buckled around him in a scabbard, and that was the reason he had it on the evening that deceased was killed. This evidence, on objection by the State, to it for illegality, irrelevancy and incompetency, the court would not allow. The defendant then asked the witness the following questions: "Had you not been carrying your pistol in a scabbard in this manner since Buntin was killed?" "Had you not been warned since Buntin was murdered that your life was in danger by reason of the active part you had taken in apprehending the murderer of Buntin, and was not that the sole reason that you had been in the habit of carrying a pistol in this manner?" and "Were you that evening carrying your pistol in its scabbard as was your habit, after you received the warning after the Buntin murder?" Each of these questions was properly disallowed. The fact that Gibson was armed on the occasion and wore his pistol unconcealed in a belt strapped around his waist, was brought out by defendant on his cross-examination of the State's witness, Pippen, and the court allowed the witness to state, that on the evening of the killing, he was not carrying the pistol for the purpose of having a difficulty with either of the Hollingsworths,—the deceased and his brother, Claude,—nor was he carrying it for the purpose of assisting the defendant in any difficulty with them. Aside from the objection, that the question propounded, called for the private and uncommunicated intentions of the witness in wearing his

[Ragsdale v. The State.]

weapon, the allowance of the evidence would have been, to go outside the real issues in the case and to broaden them, by going into the various reasons why the witness carried a pistol. The defendant had received the benefit of the proof, if that were important, that the witness wore the weapon unconcealed, and that he was not thus armed for the purpose of engaging in a difficulty with the Hollingsworths, or of aiding the defendant. If entitled to that much, there was no error in not allowing him to go into the transaction of the Buntin homicide.

3. The defendant sought to prove by himself as a witness, that on Thursday before the killing occurred, deceased threatened his life; that he immediately swore out a peace warrant before a justice of the peace, against him; and, by other witnesses, that they had heard deceased, prior to the day of the killing, threaten to take the life of defendant, which evidence the court refused to allow.

The law as settled by this court is, "That no threats previously made by the deceased, whether communicated to the defendant or not communicated, are admissible in trials for homicide, unless it appears from the testimony that, at the time of the killing, the deceased had sought a conflict with the accused, or was making some demonstration, or overt act of attack, towards the accomplishment or perpetration of such threats. * * * In other words, the circumstances in evidence must properly raise a case of self-defense," (*Roberts v. State*. 68 Ala. 164; *Green v. State*, 69 Ala. 7); that where the defendant is shown to have been the aggressor, threats previously made by the deceased, against defendant, cannot excuse or extenuate his assault, and that parties cannot, under the pretext of self-defense, bring on a difficulty, and shield themselves by proof of previous threats (*Burke v. State*, 71 Ala. 377). "He who provokes a personal rencounter, in any case, thereby disables himself from relying on the plea of self-defense in justification of a blow he struck during the rencounter."—*Scoggins v. State*, 120 Ala. 369, and authorities were cited.

c3

[Ragsdale v. State.]

The evidence on the part of the State, as well as that by the defendant, shows without conflict, that defendant was the aggressor and brought about the rencounter in which he slew the deceased. The proposed proof about threats of deceased, and the peace warrant he had sued out against him was, therefore, irrelevant and inadmissible, and the court did not err in disallowing it. Nor was there error in not allowing defendant, as a witness for himself, against the State's objection for illegality, irrelevancy and immateriality, to answer the question, "Whether or not you were carrying your pistol after Bert Hollingsworth threatened to take your life at Eastman's Mill?"—which was some two or three days before the deceased was killed. That fact, if true, in no way justified the fatal assault on the deceased.

4. The court was requested by defendant to give its general charge in writing, which it did. This charge, as to the law of the case, is a substantial copy of the charge of the same judge in the case of *Green v. State,* 98 Ala. 14, and which was there declared to be correct. The defendant excepted to this charge as a whole. This exception could not be sustained, unless the entire charge was erroneous, which is not the case.

The venue of the crime was fully proved, without conflict, and is undisputed, and no instruction was given, refused or requested, as to the same. "Without a decision by the circuit court, made the subject of an exception and involving an inquiry into the sufficiency of the evidence, this court will not interfere."—*Hubbard v. State,* 72 Ala. 164; *Clarke v. State,* 78 Ala. 477. Even a charge given at the request of the State, which ignores proof of venue, fully established, is not erroneous on that account.—*Smith v. State,* 118 Ala. 118. It is only when there has been no proof of venue, that a charge which ignores venue is erroneous. Cases cited on brief of counsel for defendant appear to be of that class.

The defendant excepted "separately and severally to each portion of said written charge that has been marked with brackets in pencil on the margin of said original charge," and "to each portion or part of said

written charge which was marked by quotaion marks in pencil on the margin and in the body of said written charge."

This charge as set out in the transcript contains no brackets or quotation marks, to show the parts excepted to by defendant. Attached to the transcript is what purports to be a paper certified to this court by the clerk of the circuit court by order of that court, as the original charge. In it, on inspection, we find some lines on margin of the paper, which are not brackets, and we fail to find quotation marks in it, such as to indicate certainly, in either case, any part of the charge to which exceptions were reserved. But, even if specified portions of the charge were included within brackets or quotation marks, we could not look to it for the purposes of ascertaining exceptions that may have been reserved to any part or parts of it. We are shut up, for such purposes, to the charge as copied in the transcript.

It is objected to this charge as a whole, that it fails to instruct as to manslaughter in the second degree. This objection is unavailing. There was entire absence of evidence tending to show that the crime was manslaughter in the second degree, but all the evidence without conflict or dispute, showed that the killing by defendant was intentional, and his effort in the case is to justify it on the score of self-defense. In such case, the court was under no duty, and indeed it would have been improper, to charge the jury as to involuntary manslaughter.—*Compton v. State*, 110 Ala. 35; *Person v. State*, 99 Ala. 153; *DeArman v. State*, 71 Ala. 351.

Nor was there error, of which defendant can complain, in that part of the general charge as to the burden of proof, which stated, that "In this case, the killing is not denied, nor is it denied that it was done intentionally with a deadly weapon, and the law puts upon the defendant the burden of rebutting the presumption of malice, unless the facts and circumstances of the killing rebut this presumption. (In this case, the burden is upon the defendant to *reasonably satisfy* your minds that he acted in self-defense, unless the evidence

which proves the homicide, proves also the excuse or justification.)"

The latter part of this charge, which for convenient reference we have placed within parentheses, according to our later adjudications is subject to the vice of placing too great a burden on defendant in establishing a plea of self-defense. A defendant is required to do no more for his acquittal, than raise a reasonable doubt of his guilt.—*Hinson v. State*, 112 Ala. 41, 46. But, this was error without injury, since the evidence shows without conflict that the defendant was the aggressor and cannot set up the plea of self-defense. *Scoggins v. State, supra.*

5. The charges requested by and given for the State, numbered 1, 2 and 3, respectively, were, under the evidence in the case, free from error.

The defendant requested 59 written charges, 54 of which were given and 5 refused. Those given cover every phase of the case, and were as favorable to defendant as he could require, and, in some instances, more so. Those marked, respectively, 9, 11, 25, 30 and 31, were bad and properly refused.

Let the judgment below be affirmed