35 So.2d 363

### COCHRAN v. STATE.
### 1 Div. 551.

Court of Appeals of Alabama.
March 16, 1948.

Rehearing Denied May 11, 1948.

516

Hybart & Chason, of Bay Minette, R. L. Jones, of Monroeville, and Harry Seale, of Mobile, for appellant.

A. A. Carmichael, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The principals, in the unfortunate tragedy disclosed by the record, that is to say, the defendant and the deceased, were total strangers to each other. They had never seen each other, and did not know each other's name. This fact being without dispute the appellant earnestly insists there could have been no motive in taking the life of deceased except to save his own life or to save him from suffering grievous bodily harm. The evidence as to the immediate facts of the difficulty tended to show that appellant uttered no word, nor committed any act which was calculated to provoke or bring on the difficulty. To the contrary, it is insisted that it clearly appears he was undertaking to appease and placate the deceased who was angry and belligerent, because of the fact that witness Adams had accidentally and unintentionally backed his automobile into deceased's parked truck by which he was standing. This slight and unintentional accident was the initial cause of the ensuing controversy

and difficulty in which the deceased lost his life. The evidence, without dispute, tends to show that when witness Adams discovered he had backed into the truck, he, Adams, moved his car away for about 30 or 40 feet, got out of his car and was approached by deceased who appeared to be infuriated. Adams testified "when I got out of my car he was there by it and I asked him 'did I hurt you sir,' and he said 'no you didn't, but you could have,' and I said 'did I?' and he said 'no but you could.' I said 'if I did, I would be only too glad to pay for it, or anything I could do for it,' and he said, 'you'll pay for it if the blade stays in the handle of this knife.' He had a knife." Witness also testified: "In the meantime Walter (defendant) came up and he heard Mr. Higgison (deceased) and me discussing the knife and Walter said 'Cap put up your knife. He's offered to pay you." He asked him twice and he (deceased) said, "I'll put the knife in you" and took a step towards him and Walter took a step or two back, and shot him one time. Deceased had the knife up in a striking position, and told him that he would put it in him and was going towards him and the defendant was backing back.

Defendant elected to testify in his own behalf, and did testify substantially as follows: That he left the Cafe after Adams, got in his car waiting for the other members of his party and that he heard the bump and looked back and saw his cousin, Adams, getting out of his car and a man standing at the back of the car. That he went to where this man and Adams were and that he heard Adams ask the man to put up the knife, that he would pay him if he said he was damaged and that if his legs were hurt, he would take him to a hospital, and that the defendant said, "Yes, we will settle it," and that he asked him to put up the knife also. That the deceased was talking in a loud tone of voice, and that the deceased appeared to be mad. That when he said, "Yes, put up the knife and we will settle with you," the deceased turned to him and told him that he would put the knife in him. That the deceased lunged toward him and that the defendant stepped back at the same time. That he was three or four feet from him when he shot him. That the deceased had his knife in a striking position and was coming on him at the time fast. That he shot him once and then he walked towards the cafe and asked that an ambulance be sent for, and also offered to carry the deceased to the hospital in his automobile.

The evidence shows that the deceased was brought to the City Hospital in Mobile where he died later.

Defendant's wife, Mrs. Walter E. Cochran, Jr., was also an eye witness, and her testimony tended to corroborate in detail the evidence given by her husband, and also by witness Adams. Among other things, she testified that at the time that her husband fired the shot he was backing away from him and the deceased was coming on him in close proximity with a knife raised in his hand in a striking position.

The only other witness to give testimony as to the difficulty was State witness Mrs. Harold Higgison, wife of the deceased, she testified in substance, the deceased, Harold Higgison, had parked a chevrolet truck on the opposite side of the highway at a distance of about forty feet from the front door of the cafe, and at the time that H. M. Adams and his party came out from the cafe and got in Adams' car for the purpose of returning to their homes, the deceased was standing by his truck on the side next to the cafe with a knife in his hand, she being seated in the truck, and according to her testimony the deceased was cleaning a spark plug with a pretty good size knife. That when H. M. Adams got in his automobile, he cranked it up and suddenly backed the same across the highway and into the truck of the deceased and against the legs of the deceased. That Adams then drove his car up the road about forty feet and got out of the same, at which time the deceased walked hurriedly up to Adams and in a loud voice complained of Adams' actions in the matter. She further testified that when the deceased walked up to where Adams was, he stated that somebody could be hurt. That at this time Cochran, the defendant, asked her husband as to what he had in his hands and her husband told him that he had a knife, and that Cochran asked him what was he doing with it and her husband said he was cleaning the spark

plugs, and the defendant said, "You can't mess with me," and shot the deceased.

In contradiction of the evidence of Mrs. Higgison, witness H. C. Hall testified, after proper predicate, that on the night in question after the wounded Higgison had been carried to the City Hospital in Mobile, he heard Mrs. Higgison make the statement "that it was raining at the time of the shooting, and it was so far away until she could not see to identify and could hear but little of what was said."

The indictment charged the defendant with the offense of murder. Upon arraignment, the defendant interposed his plea of not guilty, and relied upon self defense.

The trial resulted in the conviction of the defendant of manslaughter in the first degree, and his punishment was fixed at imprisonment in the penitentiary for seven years.

■ Pending the trial in the court below several exceptions were reserved to the rulings of the court, and are here properly presented for review. As we see it however, the principal and controlling questions are the exceptions reserved to the oral charge of the court, wherein the trial court charged the jury, (1) "that the burden of proof was on the defendant to reasonably satisfy them that he was in imminent danger of life or limb, and that he had no reasonable escape." (2) "That the burden does shift to the defendant, on his plea of self-defense, to show that he was in peril and had no reasonable mode of retreat without increasing his peril."

The exceptions, above discussed, are well taken and must be sustained. The following authorities are conclusive as to this: Hubbert v. State, 32 Ala.App. 477, 27 So. 2d 228; Williams v. State, 213 Ala. 121, 104 So. 282; Perry v. State, 211 Ala. 458, 100 So. 842; Ragsdale v. State, 134 Ala. 24, 36, 32 So. 674; Baker v. State, 19 Ala. App. 432, 98 So. 213; Ex parte State ex rel. Attorney General (Baker v. State), 210 Ala. 374, 98 So. 215; Barbaree v. State, 24 Ala.App. 127, 130 So. 903; Lee v. State, 24 Ala.App. 168, 132 So. 61; Fuqua v. State, 23 Ala.App. 467, 127 So. 251; Jones v. State, 23 Ala.App. 77, 121 So. 1; Meadows v. State, 26 Ala.App. 311, 159 So. 268.

■ There was also error in the court's action in overruling defendant's objection to the State's attorney's argument wherein he stated, when a person sets up self-defense that the burden is upon him to come forward with evidence to show that he is free from fault in bringing on the difficulty. Such burden rests upon the State and not upon the defendant.

Numerous other insistences of error are presented, we however see no necessity to discuss them in detail, as the judgment of conviction from which this appeal was taken, must be reversed for the reasons hereinabove stated. Moreover, said questions may not arise upon another trial.

For the errors indicated the judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.

## On Rehearing.

BRICKEN, Presiding Judge.

In our discussion above relative to the exceptions reserved to the court's oral charge, as to the burden of proof, we cited numerous authorities among which was the case of Perry v. State, 211 Ala. 458, 100 So. 842, 843. We advert to said case again it being on all fours and fully analogous to the case at bar. In said case, our Supreme Court, speaking through Justice Sayre said:

"The leading proposition of this appeal, defendant's main cause of complaint, is that the court, instructing the jury on the subject of self-defense—the only litigable question in the case—told the jury that the burden rested upon defendant to prove to the reasonable satisfaction of the jury the necessity for taking the life of deceased, and that there was no reasonable avenue of escape. That this burden in some sort rested upon the defendant has long been the settled law of this court. The proposition has been frequently stated by the court. It will suffice to cite a few of the cases. Gibson v. State, 89 Ala. 121, 8 So. 98, 18 Am.St.Rep. 96; Naugher v. State, 105 Ala. 29, 17 So. 24; Henson v. State, 112 Ala. 41, 21 So. 79; McGhee v. State, 178 Ala. 4, 59 So. 573. But defendant's complaint is that the burden was too heavily laid upon him,

that he should not have been required to prove the named elements of self-defense to the reasonable satisfaction of the jury, but that he met the requirements of the law if his evidence created a reasonable doubt as to whether he acted in self-defense, and the latest decisions of this court have been in accord with this contention. McGhee v. State, supra; Roberson v. State, 183 Ala. 43, 62 So. 837; Ex parte State ex rel. Attorney General in re Baker v. State, 210 Ala. 374, 98 So. 215. True, the court also instructed the jury to acquit if, upon the whole evidence, that tending to support the plea of self-defense included, they entertained a reasonable doubt whether the defendant had acted in self-defense; but, as to that, it is complained that, by refusing to change its instruction on this point when exceptions were reserved, the court added emphasis to its erroneous statement of the law (Berry v. State, 209 Ala. 120, 95 So. 453), and that the trial court could not avoid a reversal by charging the law in contradictory ways, for, in such case, the jury would not know which instruction to follow (Roberson v. State, 183 Ala. 60, 62 So. 837). We apprehend the trial court intended no ambiguous statement of the law—in fact there are decisions of this court which may seem to sustain the court's method of stating the law of self-defense to the jury; but, in view of the later cases to which we have referred, the court concludes that the judgment of conviction in this case should be reversed.

"Reversed and remanded."

 In our original opinion this court said:

"There was also error in the court's action in overruling defendant's objection to the State's attorney's argument wherein he stated, when a person sets up self-defense that the burden is upon him to come forward with evidence to show that he is free from fault in bringing on the difficulty. Such burden rests upon the State and not upon the defendant."

In connection with the foregoing the record shows the following:

"During the argument of the case by Mr. H. M. Hall, one of the Attorneys for the State, the following proceedings occurred:

"Mr. Seale: We object to the gentleman arguing to the jury that as a matter of law and in his opinion that where a man sets up self-defense that he has to prove freedom from fault in bringing on the difficulty.

"The Court: I think he has a right to say that.

"Mr. Hall: Can I argue that?

"The Court: You have a right to argue that and I overrule the objection.

"Mr. Seale: We object to the gentleman making the argument and except to the Court's overruling the objection.

"The Court: I understood the gentleman to say that when a person sets up self defense that the burden is upon him to come forward with evidence to show that he is free from fault in bringing on the difficulty.

"Mr. Seale: We object to that as being stated as a matter of law.

"The Court: He stated that in his opinion the Court would so charge the jury. He also stated that it was his opinion that that was the law.

"Mr. Seale: Does your Honor overrule my objection?

"The Court: Yes.

"Mr. Seale: We except, and move the Court to exclude the gentleman's statement as to the law, as being absolutely contrary to the law.

"The Court: Overrule the motion.

"Mr. Seale: We except."

The above quoted statement of counsel for the State is not the law, and has never been the law. The objection interposed should have been sustained, and the motion to exclude the erroneous argument should have been granted. The statements of the court (1) "I think he has the right to say that"; and (2) "I understood the gentleman to say that when a person sets up self-defense that the burden is upon him to come forward with evidence to show that he was free from fault in bringing on the difficulty," were erroneous, and highly prejudicial, and had the tendency to emphasize the illegal and objectionable argument of counsel for the State.

It is insisted by the State that the incorrect statements by the court and solicitor had no influence with the decision of the jury. To this insistence we are not in accord. The trial court could not avoid a reversal by charging the law in contradictory ways for in such case the jury would not know which instruction to follow.

The application for rehearing, by the State, is overruled.

Opinion extended.